**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 08-cv-01169-CMA

TERESA ZIRKELBACH,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

---

**ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DECISION**

---

## I.  OVERVIEW

This is a social security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Teresa Zirkelbach ("Plaintiff") challenges the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner"), denying her application for social security disability and supplemental security income benefits.  The denial was affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act").  Plaintiff argues the ALJ committed five errors:

    (1)    The ALJ applied incorrect legal standards and his conclusions are not

           supported by substantial evidence;

(2)     The ALJ improperly evaluated Plaintiff's impairment resulting from

Attention Deficit Hyperactivity Disorder ("ADHD") and Depression;

(3)     The ALJ failed to consider Plaintiff's impairments in combination;

(4)     The ALJ improperly assessed Plaintiff's credibility; and

(5)     The ALJ failed to properly evaluate the Vocational Expert's ("VE")

testimony.

(Doc. # 21.)

Plaintiff requests that this Court either find her entitled to Social Security

Disability benefits or, in the alternative, remand the case for further consideration.  After

considering the parties' arguments, and for the following reasons, the Court AFFIRMS

the ALJ's decision.

## II.  FACTS

### A.     MEDICAL EVIDENCE

Plaintiff was born on January 21, 1964, and was 40 years old at the onset of her

alleged disability.  She completed high school and college and has worked in the

vocationally relevant past as a bill collector, cashier, courier, customer service

representative, banker, security guard, and various clerical positions.  She alleges she

became disabled on April 4, 2004, because of depression and psychological issues.

(Doc. # 11 at 49, 146, 53-62, 85-86, 34.)

Plaintiff has a history of attention deficit disorder (ADD), for which she has been

treated with medication including Ritalin and Strattera.  Records indicate that beginning

in January 2003, Plaintiff received treatment from Oasis Family Practice, where she was diagnosed with attention deficit hyperactivity disorder (ADHD) and prescribed Concerta. (*Id.* at 132-40.)

In June 2004, Plaintiff reported having poor attention span, but denied insomnia and being short with people.  Her dosage of Concerta was increased to 54 mg.  One month later, Plaintiff reported feeling much better and focused.  Her difficulties with her peers improved and her lack of staying on task and her lack of attention to detail had disintegrated.  (*Id.*)

On July 1, 2005, Plaintiff completed a function report, in which she stated that she lived alone, took care of her own needs, cared for her cat, shopped, and participated in social activities including church and soccer.  She also reported, however, that she had difficulty getting along with others because of her ineffective communication and time management problems.  Plaintiff said that she did not handle stress well and sometimes forgot to record checks in her checkbook register.  (*Id.* at 105-12.)

In August 2005, Plaintiff underwent a psychiatric evaluation by Timothy Cucich, M.D.  She reported problems maintaining employment because of her ADHD.  In her words, she has "literally been looking for a job [her] whole life."  She did, however, have a part-time job at the time, having worked "probably three days" in the previous month. Dr. Cucich assessed Plaintiff's concentration as "extremely poor" and assessed her with adult ADHD, a Global Assessment of Functioning (GAF) score of 65, and

recommended "another trial of stimulant" such as Concerta or Adderall XR "since

[Plaintiff stated] she had some benefit in the past." (*Id.* at 141-45.)

In a medical report dated August 31, 2005, Ronald Rabin, M.D., Plaintiff's

treating psychiatrist, reported that Plaintiff had been diagnosed with ADHD and had

been treated with stimulant medications, which, while helpful, had not always been

continued.  Dr. Rabin found:

> no evidence of any significant mood disorder.  She demonstrated mild
> depression and anxiety but did not have the intensity of symptoms
> associated with major depression or mania.  There were no psychotic
> thought processes.  She was oriented to time, place, person, and situation
> but had difficulties with attention.

(*Id.* at 146.)

On September 7, 2005, Alberta Ziomek, M.D., reviewed Plaintiff's medical

records and evaluated Plaintiff using a mental RFC assessment form.  Despite Plaintiff's

ADHD, Dr. Ziomek determined that Plaintiff was either "not significantly" or "moderately"

limited in all rated areas of mental functioning.  Dr. Ziomek concluded that Plaintiff

should have limited contact with the public, co-workers, and supervisors and would do

best in a job that requires making only simple decisions and following simple

instructions.  (*Id.* at 147-55.)

## B.    PROCEDURAL HISTORY

On April 13, 2005, Plaintiff filed applications for Disability Insurance Benefits

and Supplemental Security Income.  The Social Security Administration denied

Plaintiff's applications on September 9, 2005, and Plaintiff filed a timely request for

a hearing before an ALJ.  (*Id.* at 33, 39-42.)

1.   <u>Administrative Hearing</u>

The ALJ held a hearing on April 24, 2007, at which Plaintiff and her mother testified.

Plaintiff testified that she had been unable to work due to her ADHD and bipolar disorder.  Plaintiff's mother testified that although she and her husband support Plaintiff, they "couldn't have her live with [them] because [they would] go stark raving mad."  (*Id.* at 167-199.)

Mr. Stephen Schmidt, a VE, also testified.  The ALJ asked him a series of questions involving a hypothetical individual of Plaintiff's age, education, and past relevant work history:

> Hypothetical one, please assume no exertional limitations; however, nonexertionally, this individual could not withstand any amount of normal job stress, could not tolerate any contact with the public, co-workers, or supervisors.  I would assume you would say there would no jobs past relevant or others that could be done.  Is that correct?

The VE answered yes.  The ALJ then replaced the previous limitations with the following:  "no exertional limitations; however, nonexertionally, the individual could only work at jobs involving simple routine tasks with occasional public contact and no high volume production line type of jobs . . . .  Could a person with those limitations do any of [Plaintiff's past relevant work]?"  (*Id.* at 202-03.)

The VE answered no.  Having excluded Plaintiff's previous jobs, the ALJ finished his questioning by asking the VE whether there existed *any* other jobs in the Colorado

economy that this person could perform.  The VE answered yes:  cleaning jobs, sewing

operators, and a variety of other unskilled jobs.  (*Id.* at 203.)

Plaintiff's counsel also posed a couple hypotheticals to the VE.  Referring

specifically to the cleaning job, he first asked the VE to consider whether that individual

would be precluded from working if she had a moderate amount of difficulty in dealing

with supervisors and co-workers.  The VE answered no, explaining that people with

cleaning jobs basically worked by themselves.  Plaintiff's counsel altered the

hypothetical:

> Say they were cleaning someone's office . . . .  The person is working late
> at night and the cleaner gets into – aggravates the person who is doing
> their work during the same time that the cleaning is being done.  Would
> that not lead a person in a simple job such as a cleaning where the –
> where it's relatively easy to replace the worker, would that not lead to the
> termination in the most cases?

The VE answered yes.  Plaintiff's counsel finished by asking whether "that kind of

confrontation" would lead to termination in the sewing job, to which the VE answered

yes.

(*Id.* at 204-05.)

2.    Administrative Decision

On July 25, 2007, the ALJ – evaluating Plaintiff's claim in terms of the five-step

process called for in the regulations – issued a decision denying Plaintiff's claim

because she was not disabled within the meaning of the Social Security Act.  *See* 20

C.F.R. § 404.1520.  Specifically, the ALJ found:

1.  That Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2009.

2.  At step one, that Plaintiff had not engaged in substantial gainful activity since April 9, 2004, the alleged onset date.

3.  At step two, that Plaintiff had the following severe impairments: attention deficit hyperactivity disorder and organic mental disorder.

4.  At step three, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.  That Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: she has the ability to understand, remember, and carry out simple, repetitive tasks with occasional public contact but should not be required to perform high volume production line jobs.

6.  At step four, that Plaintiff is unable to perform any past relevant work.

7.  That Plaintiff was born on January 21, 1964, and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.  That Plaintiff has at least a high school education and is able to communicate in English.

9.  That transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not she has transferable job skills.

10. At step five, that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. That Plaintiff had not been under a disability, as defined in the Social Security Act, from April 9, 2005 through July 25, 2007 (the date of the ALJ's decision).

(*Id.* at 17-25.)

In determining Plaintiff's RFC, the ALJ considered Plaintiff's symptoms using

the two-step process called for in the regulations. *See* 20 C.F.R. §§ 404.1529 and

7

416.929; Soc. Sec. Rulings 96-4p, 96-7p.  He first found that Plaintiff's medically determinable impairments – attention deficit hyperactivity disorder and organic mental disorder – could reasonably be expected to produce the alleged symptoms.  At step two, however, he found that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms were not entirely credible.  (Doc. # 11 at 21-23.)

In so finding, the ALJ considered opinion evidence as well as Plaintiff's subjective complaints and treatment records.  Regarding her treatment, the ALJ noted that although Plaintiff had received treatment for her impairments, that treatment had been routine and conservative in nature and, moreover, there was evidence that Plaintiff had not been entirely compliant in taking her prescribed medications.  Regarding opinion evidence, the ALJ gave substantial weight to Dr. Ziomek's opinion that Plaintiff could perform simple job instructions with limited contact with others.  Furthermore, he noted that the record contained no opinions from treating or examining physicians indicating that Plaintiff is disabled or has limitations greater than those determined by the ALJ.  Thus, although Plaintiff claimed that she could no longer work because of her limitations, the ALJ determined she was exaggerating her limitations.  (*Id.*)

3.    Plaintiff's Appeal

The Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the final administrative decision for purposes of judicial review.  (*Id.* at 5-13.)  On June 3, 2008, Plaintiff filed a complaint challenging Defendant's decision.

8

The parties filed Opening, Response, and Reply Briefs in May and June of 2009 and

this Court heard oral argument on September 17, 2009.  (Doc. ## 1, 21-23, 28.)

### III.  ANALYSIS

### A.   STANDARD OF REVIEW

The Court reviews Defendant's decision to determine whether substantial

evidence in the record as a whole supports the factual findings and whether the correct

legal standards were applied.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir.

2009).  "Substantial evidence is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.  It requires more than a scintilla, but less

than a preponderance."  *Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.

2007)).  "Evidence is not substantial if it is overwhelmed by other evidence in the

record."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In so reviewing,

the Court may neither reweigh the evidence nor substitute its judgment for that of the

agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

### B.   EVALUATION OF DISABILITY

The qualifications for disability insurance benefits under the Social Security Act

are that the claimant meets the insured status requirements, is less than sixty-five years

of age, and is under a "disability."  *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).

The Social Security Act defines a disability as an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

9

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).

The Commissioner has established a five-step process to determine whether a claimant qualifies for disability insurance benefits.  *See* 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988).  That process requires the adjudicator to consider whether a disability claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See id.*; *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of proof at steps one through four; the Commissioner has the burden of proof at step five. *Lax*, 489 F.3d at 1084.  If a decision regarding the claimant's disability can be reached at any step in the process, further evaluation is unnecessary.  *Williams*, 844 F.2d at 750.

## C.   DISABILITY DETERMINATION

Plaintiff alleges the ALJ made five errors: (1) applied incorrect legal standards in evaluating Plaintiff's subjective complaints; (2) improperly evaluated Plaintiff's impairments; (3) failed to consider Plaintiff's impairments in combination; (4) improperly assessed Plaintiff's credibility; and (5) improperly evaluated the VE's testimony.

1.    Did the ALJ Apply the Correct Legal Standards in Evaluating Plaintiff's
      Subjective Complaints?

Plaintiff first argues that the ALJ erred by not evaluating Plaintiff's subjective

complaints in light of the analysis required by *Luna v. Bowen*, 834 F.2d 161 (10th Cir.

1987).  The *Luna* court interpreted 42 U.S.C. § 423(d)(5), which Congress had recently

amended to include an "objective" evidence requirement, i.e., that a claimant present

objective medical evidence showing an impairment.  *See Luna*, 834 F.2d at 165.  The

court reversed a district court ruling which held, in part, that regulations regarding the

evaluation of a claimant's symptoms were "facially invalid because they require[d] the

claimant to show 'objective' evidence of a pain-producing impairment before a decision

maker [could] find a claimant disabled by pain."  *Id.* at 162.

As an initial matter, the *Luna* court fashioned a rule to guide decision-makers in

evaluating subjective complaints of pain.  *See Luna*, 834 F.2d at 163.  Plaintiff here

does not allege she is in pain.  Nonetheless, the Court applies *Luna* because one's

degree of pain and one's difficulty concentrating – a symptom of ADHD – are both

subjective complaints, i.e, evidence that a decision maker must evaluate solely on

the basis of the credibility of the witness.  Moreover, the *Luna* court was interpreting a

statutory provision addressing not only pain, but also, other symptoms.  *See id.* at 162

n.2; 42 U.S.C. § 423(d)(5)(A).

The *Luna* court articulated a standard by which decision makers could determine

whether a given impairment is one that could "reasonably" be expected to produce the

alleged disabling pain.  *Id.* at 163.  The court decided that decision makers must

11

consider *all* the evidence that could reasonably produce the alleged pain *once* a claimant demonstrated a pain-causing impairment. *Id.* at 165. In other words, whenever a "loose nexus" is shown between the impairment and the alleged pain, the ALJ must consider the claimant's subjective complaints. *Id. Luna* thus requires only that the ALJs *consider* the claimant's subjective complaints; it does not, however, require that ALJs credit those complaints as entirely truthful. *See id.* at 165.

In this case, the ALJ properly considered Plaintiff's subjective complaints using the two-step process described in 20 C.F.R. § 404.1529. That process compels the ALJ to consider not only the objective medical evidence – as he did – but also Plaintiff's subjective complaints in deciding how to evaluate the claimant's symptoms. That same principle – that the ALJ consider a claimant's subjective complaints – underlies *Luna*, which requires only that the ALJ not disregard Plaintiff's subjective complaints, *i.e,* consider only the "objective" medical evidence in evaluating a claimant's symptoms.

The idea behind requiring an ALJ to consider a claimant's subjective complaints – a requirement embodied in both 20 C.F.R. § 404.1529 and *Luna* – can be explained as follows: "[b]ecause the same impairment can cause differing levels of pain in different people, the question is the range of pain that any given impairment can be reasonably expected to produce." *See Luna*, 834 F.2d at 164 n.3. "For example, an impairment likely to produce *some* back pain may reasonably be expected to produce *severe* back pain in a particular individual." *Id.* at 164 (emphasis in original). Similarly, one can say that ADHD, which is likely to produce *some* problems with concentration

12

may reasonably be expected to produce *severe* problems with concentration in a particular individual.  The point, then, is that the ALJ must not disregard subjective complaints just because they sound extreme.  On the flip side, however, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability [.]"  42 U.S.C. § 423(d)(5)(A).

No one disputes that the ALJ undertook the analysis called for in 20 C.F.R. § 404.1529.  (*See* Doc. # 11 at 21-23.)  The regulation explains the process:

> When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms . . . we must then evaluate the intensity and persistence of your symptoms . . . .  In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence, including . . . statements from you."

20 C.F.R. § 404.1529(c)(1).

The ALJ here considered not only the objective medical evidence but also Plaintiff's subjective complaints, as he was required to under the regulations.  Because there was evidence in the record showing periods during which Plaintiff had not been compliant with her medications, her subjective complaints of a disabling inability to interact with others in the workplace were suspect.  *See Kelly v Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (claimant's Crohn's Disease, well-controlled, was not disabling); *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (frequency of medical contacts and extensiveness of the attempts, medical or nonmedical, to obtain relief may be considered in evaluating disability).

The Court finds the ALJ applied the correct legal principles in evaluating Plaintiff's subjective complaints and his conclusions are supported by substantial evidence in the record.

2.   Did the ALJ Improperly Evaluate Plaintiff's Impairments?

Second, Plaintiff argues that the ALJ improperly disregarded the diagnoses and conclusions of Plaintiff's treating physician, Dr. Rabin, and Plaintiff's examining psychiatrist, Dr. Cucich.  In particular, she argues that "[t]he observations and medical conclusions of Dr. Rabin and Dr. Cucich indicate that [Plaintiff] suffered from significant functional limitations during the relevant time period."  (Doc. # 23 at 4.)

a)   Dr. Rabin

Dr. Rabin was Plaintiff's treating psychiatrist.  As such, the ALJ was generally bound to give greater weight to the opinion of Dr. Rabin as compared to non-medical sources or medical sources who did not treat Plaintiff.  *See* 20 C.F.R. § 404.1527(d)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

The law allows an ALJ to give less than controlling weight to a treating source opinion, but only if that opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques, or is inconsistent with other evidence in the record. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); Soc. Sec. R. 96-2p 1996 WL 374188.  But even if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference and must be weighed using the factors provided in

14

20 C.F.R. §§ 404.1527 and 416.927.[1] *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (citation and quotation marks omitted).  "After considering the pertinent factors, the ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion.  Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so."  *Wade v. Astrue*, 268 Fed. Appx. 704, 705 (10th Cir. January 23, 2008) (unpublished) (citing *Watkins*, 350 F.3d at 1301)).

Although Plaintiff contends that the ALJ "completely disregarded [Dr. Rabin's] psychiatric diagnosis and conclusions," Plaintiff fails to support this sweeping statement with any references to the record.  In oral argument before the Court, Plaintiff's counsel conceded that "everyone agrees that this lady has attention deficit disorder that is organic."  Indeed. The ALJ found at step two that Plaintiff's ADHD and organic mental disorder were severe impairments, a finding consistent with Dr. Rabin's assessment dated August 2005.  (Doc. # 11 at 20, 146.)

In deciding upon Plaintiff's RFC, the ALJ considered Plaintiff's impairments, and her subjective complaints, and concluded that although Plaintiff had some limitations,

---

[1]  Those factors are:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

they were insufficient to prevent her from working: "she has the ability to understand, remember, and carry out simple, repetitive tasks with occasional public contact but should not be required to perform high volume production line jobs." (*Id.* at 21-23.) The ALJ also noted that the "record does not contain any opinions from treating or examining physicians indicating that [Plaintiff] is disabled or even has limitations greater than those determined in this decision." The ALJ's observation is accurate and – aside from Plaintiff's subjective complaints – there is nothing in the record to suggest Plaintiff's limitations are worse than those described above.

After the ALJ decision, Plaintiff presented new evidence in support of her claims to the Appeals Council, in particular, a letter from Dr. Rabin dated October 23, 2007, stating his opinion that Plaintiff should "qualify for Social Security disability" because of chronic ADHD and a mood disorder. (*Id.* at 165-66.) As a rule of thumb, "[t]he ALJ's decision should [be] evaluated based solely on the reasons stated in the decision." *Robinson*, 366 F.3d at 1084. Specifically, new evidence should not be considered unless it is (a) new, (b) material and (c) related to the period on or before the date of the ALJ decision. *See Chambers v. Barnhardt*, 389 F.3d 1139, 1142 (10th Cir. 2004) (internal citations omitted).

Dr. Rabin's post-decisional letter is new but it is not material. Evidence is material to the determination of disability if there is a reasonable possibility that it would have changed the outcome. *Id.* at 1144. Even if Dr. Rabin's letter had been before the ALJ, it would not have changed the ALJ's decision, because in stating that Plaintiff

16

should "qualify for Social Security disability", Dr. Rabin offers an opinion on the ultimate

issue of whether Plaintiff is disabled, an issue expressly reserved for the Commissioner.

*Castellano v. Secretary of Health and Human Services*, 26 F.3d 1027, 1029 (10th Cir.

1994) (The "final responsibility for determining the ultimate issue of disability is reserved

to the [Commissioner].")  For these reasons, the Court accords no significance to Dr.

Rabin's post-decisional opinion of Plaintiff's disability.

The Court finds that the ALJ applied the correct legal principles in evaluating

Dr. Rabin's earlier assessment.  The Court further finds that the ALJ's decision and

Dr. Rabin's assessment are consistent, and that the ALJ's conclusions are supported by

substantial evidence.

   *b)*  *Dr. Cucich*

Plaintiff's position on the Dr. Cucich assessment varies from brief to brief.  In her

opening brief, Plaintiff argues that the ALJ gave insufficient attention to Dr. Cucich's

opinion.  In her reply brief, however, Plaintiff argues the ALJ gave too much attention to

Dr. Cucich's opinion, at least his GAF score assessment of Plaintiff.[2]  Dr. Cucich was

not a treating psychiatrist, so his opinion is not entitled to the deference accorded

Dr. Rabin's opinion.  *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003).  None-

---

[2] "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's
judgment of the individual's overall level of functioning . . . ."  *Langley v. Barnhart*, 373 F.3d
1116, 1123 n. 3 (10th Cir. 2004) (quotations omitted).  Dr. Cucich gave Plaintiff a GAF score
of 65.  (Doc. # 11 at 144.)

theless, Dr. Cucich did perform a face-to-face clinical examination of Plaintiff so his opinion, like other evidence in the record, is considered by the Court.

As with Dr. Rabin's report, Dr. Cucich's report is consistent with the ALJ's findings – that Plaintiff had severe mental disorders that restricted her to performing only a limited range of unskilled work requiring only simple tasks with occasional contact with the public and no high volume production line jobs.  In addition, there is no indication from the record that the ALJ attributed undue weight to Plaintiff's GAF score. Instead, it appears the ALJ considered it as one piece of evidence, to be considered in light of the record as a whole.  (*Id.* at 141-45, 21-23.)

      3.    <u>Did the ALJ fail to consider Plaintiff's impairments in combination?</u>

Third, Plaintiff argues the ALJ erred by not considering the combined effect of Plaintiff's ADHD and depression.  "At step four, the ALJ must consider whether the claimant's impairment or combination of impairments prevents [her] from performing [her] past work." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (citations and quotation marks omitted).

The ALJ stated that he considered "all symptoms" in assessing Plaintiff's RFC. (*Id.* at 21.)  As the Tenth Circuit has stated, "our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."  *Id.* (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

Moreover, it is clear from the record that the ALJ did consider Plaintiff's impairments in combination: "After considering the evidence of record, [the ALJ] finds that the claimant's   medically determinable impairments [which he determined at step two were ADHD and organic mental disorder] could reasonably be expected to produce the alleged symptoms[.]"  (*Id.* at 23.)  Thus, he expressly considered both impairments in tandem.  What hurt Plaintiff, however, was the ALJ's credibility assessment.  Given Plaintiff's active lifestyle (soccer, attending church weekly), and given also that she had "not been entirely compliant" with her treatment and that none of the doctors found her impairments disabling, the ALJ concluded Plaintiff was exaggerating her symptoms.  (*Id.* at 22-23.)  The ALJ's determination, as explained here and in the next section, is supported by substantial evidence.

    4.    <u>Did the ALJ improperly assess Plaintiff's credibility?</u>

Fourth, Plaintiff argues the ALJ's credibility determination of Plaintiff is not supported by substantial evidence.  ALJs are given substantial discretion in evaluating the evidence and gauging witness credibility.  *See Williams v. Bowen*, 844 F.2d 748, 755 (10th Cir. 1988); *see also Winfrey v. Chater*, 92 F.3d 1017, 1020 (10th Cir. 1996) ("Credibility determinations are peculiarly the province of the finder of fact . . . and we will not upset such determinations [if they are] supported by substantial evidence.").

Plaintiff argues that the ALJ "did not make specific findings about why he did not believe [Plaintiff's] contention that she was disabled."  The Court disagrees.  The ALJ – as mentioned above – explicitly undertook the process called for in the regulations to

evaluate Plaintiff's symptoms, including her subjective complaints.  *See* 20 C.F.R. § 404.1529(c) and 416.929(c).  This process necessarily contemplates the ALJ passing judgment on a claimant's credibility, given that the extent of one's symptoms are not conducive to external testing.  *See Luna*, 834 F.2d at 162.

The ALJ considered Plaintiff's testimony at the hearing, including that she has lived alone for twenty years, uses a computer to look for work, cleans, does laundry and dishes, can drive, and regularly attends church.  He then compared that with the medical record, which indicated "significant gaps" in her history of treatment and that fact that she had not been entirely complaint with her treatment.  He noted that Dr. Rabin and Dr. Cucich did not limit her more than he himself was limiting her,[3] and that Dr. Ziomek had concluded that Plaintiff could perform work requiring making only simple decisions and following simple instructions and requiring no more than limited contact with the public.  (*Id.* at 23.)

Given the deference accorded ALJs' credibility assessments and given the thoroughness of this ALJ's opinion, it is the Court's conclusion that the ALJ applied the correct legal principles and that his assessment of Plaintiff's credibility and RFC is in accord with substantial evidence in the record.

---

[3]  Dr. Rabin noted that Plaintiff's condition improved with medication, but that the medication had not always been continued.  (*Id.* at 146.)  Dr. Cucich described Plaintiff's concentration and cognitive abilities as mild to moderately limited.  (*Id.* at 144-45).

5.     Did the ALJ improperly evaluate the VE's testimony?

Finally, Plaintiff argues the ALJ failed to evaluate her attorney's cross-examination of the VE.  Cross-examination questions by themselves, of course, are not evidence.  *United States v. Olivo*, 80 F.3d 1466, 1471 (10th Cir. 1996).  The Court assumes Plaintiff instead means the VE's testimony, produced under cross-examination.

Plaintiff argues that the VE "conceded that a person in [Plaintiff's] position was either unemployable or employable only in jobs that do not exist in significant numbers in the state or national economy."  The Court disagrees with Plaintiff's characterization.  After the ALJ had finished questioning the VE regarding a hypothetical person of Plaintiff's age, education, etc., Plaintiff's counsel altered the hypothetical:

> Say they were cleaning someone's office . . . .  The person is working late at night and the cleaner gets into – aggravates the person who is doing their work during the same time that the cleaning is being done.  Would that not lead a person in a simple job such as a cleaning where the – where it's relatively easy to replace the worker, would that not lead to the termination in the most cases?

The VE answered yes.  Plaintiff has since seized upon that answer.  The ALJ, however, was not bound to accept it.  *See Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) ("The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record.").

The medical evidence instead supported the ALJ's hypothetical, on which he based his RFC:  "no exertional limitations; however, nonexertionally, the individual could

21

only work at jobs involving simple routine tasks with occasional public contact and no

high volume production line type of jobs."  When asked by the ALJ whether this person

could perform Plaintiff's past relevant work, the VE answered no, but when asked

whether there existed any jobs for this person, the VE answered yes, giving as an

example a cleaner.  This testimony is substantial evidence to support the ALJ's step five

conclusion.  *See Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993) (approving a

hypothetical as adequately reflecting the limitations found to exist by the ALJ).

## IV.  CONCLUSION

The ALJ's denial of Plaintiff's applications for disability benefits and supplemental

income is supported by substantial evidence in the record and free of legal error.

Accordingly, the Commissioner's decision is AFFIRMED.

DATED:  November   16   , 2009

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge